IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

v.  Case No.: 23-cr-33-jdp

RICHARD L. CHAPMAN,

          Defendant.

## PLEA AGREEMENT

1. This is the proposed plea agreement between the defendant and the United States in the above-captioned case.

2. **PLEA AND PENALTIES:** The defendant agrees to plead guilty to the single count of the indictment. This count charges a violation of Title 18, United States Code, Section 2113(a), which carries maximum penalties of twenty years in prison, a $250,000 fine, a three-year period of supervised release, and a $100 special assessment. In addition to these maximum penalties, any violation of a supervised release term could lead to an additional imprisonment term pursuant to 18 U.S.C. § 3583. The defendant agrees to pay the special assessment at or before sentencing and understands that the Court will enter an order requiring the immediate special assessment payment under 18 U.S.C. § 3013. In an appropriate case, the defendant could be held in contempt of court and receive an additional sentence for failing to pay the special assessment.

3. **RIGHTS WAIVED BY PLEADING GUILTY:** The defendant acknowledges by pleading guilty, that he is giving up these rights: (a) to plead not guilty and to persist in that plea; (b) to a jury trial; (c) to be represented by counsel – and if necessary to have the Court appoint counsel – at trial and at every other stage of the trial proceedings; (d) to confront and cross-examine adverse witnesses; (e) to be protected from compelled self-incrimination; (f) to testify and present evidence; and (g) to compel the attendance of witnesses.

4. **IMMIGRATION CONSEQUENCES:** The defendant understands that upon conviction, if he is not a United States citizen, he may be removed from the United States, denied citizenship, and denied future admission to the United States. The defendant nevertheless affirms that he wants to plead guilty regardless of any removal

and immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

5.  **FACTUAL BASIS:** The defendant agrees that the following facts are true, correct, and that, if this case were to proceed to trial, the government would be able to prove these facts beyond a reasonable doubt. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described herein.

> On February 3, 2023, at 2:30 p.m., a suspect dressed in all black with sunglasses and a surgical mask came into the Park Bank, located at 33 E. Main Street, Madison, Western District of Wisconsin. The Park Bank is insured by the Federal Deposit Insurance Corporation. The suspect was carrying a plastic Culver's bag. This person was later identified as Richard L. Chapman.
>
> Chapman approached a teller and said, "Can you cash a check for me?" He handed the teller a note that said "I have a gun. I am a robber. Give me one hundreds." The teller gave him $1,790 in cash, and Chapman then left. Another employee followed Chapman for two blocks and lost sight of him on King St.
>
> Madison Police detectives viewed bank surveillance video and city street cameras. The city cameras tracked Chapman to King Street near an alley that leads to E. Wilson Street. At 7:00 p.m., detectives found discarded clothing in the state building parking ramp at 121 E. Wilson Street. This clothing was consistent with that worn by the robbery suspect. Inside of the jacket pockets was a Woodman's receipt from that morning at 7:43 a.m. Parking garage video showed Chapman entering the garage, taking off, and discarding those clothes.
>
> Detectives contacted Woodman's loss prevention officers and were able to use the transaction number on the receipt to identify the two persons involved in that purchase (Chapman and AJ Washington) as seen in surveillance stills. Woodman's also provided surveillance video of the vehicle they used, which was a Honda Accord. A license plate search showed that AJ Washington was pulled over driving that vehicle on December 6, 2022. Washington was also the registered owner of the vehicle.
>
> At 10:30 p.m. officers found the Honda Accord at the men's emergency shelter on Zeier Rd. Detectives went inside and spoke with AJ Washington who was wearing the same pants and shoes as seen in the Woodman's stills. Washington admitted to receiving a bag of cash from

the other male earlier in the day and said it was in the center console of his car. Washington gave consent to search the car and detectives found $779 wrapped in a paper bag, of which Washington said $40 was his.

Washington said that he drove the man to Woodman's that morning, and they split up to shop. They then drove to the downtown St. Vincent's store on the way to the Beacon. They then went to Goodwill where he dropped the man off. Washington then met a friend and drove around, before going back to the shelter where police contacted him.

Washington said that he knew that the man robbed a bank after he got out of the car "but didn't think nothing of it." The man gave Washington the money and said that he previously served 19 years for bank robbery.

On February 4, 2023, at around 11:45 a.m. officers were at the Beacon homeless shelter on other business when they saw Chapman and noted that he resembled the robbery suspect. They had seen Chapman carrying a duffle bag and reported that Chapman was sitting at a table eating with the duffle bag on a chair right next to him. Beacon staff gave officers Chapman's name. A sergeant approached Chapman and asked if he was Richard. Chapman said no, his name was Jeff Stevens. The sergeant said that Chapman was lying about his name and asked his whereabouts the previous afternoon. Chapman stood up and started running to a bathroom where there was no other exit. Officers arrested him and he said, "you got me."

After the arrest, a sergeant told another officer to take Chapman's duffle bag to the police department. Inside of the duffle bag officers found a plastic Culver's bag, the robbery note, and clothing consistent with that worn during the robbery.

This information is provided to establish a factual basis for the defendant's guilty plea. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

6. **SCOPE OF RESOLUTION:** The United States agrees that this guilty plea will completely resolve all possible federal criminal violations that have occurred in the Western District of Wisconsin provided that two conditions are met: (a) the criminal conduct relates to the conduct described in the indictment; and (b) the criminal conduct was known to the United States as of the date of this plea agreement. This agreement not to prosecute is limited to those types of cases for which the United States Attorney's Office for the Western District of Wisconsin has exclusive decision-making authority. The defendant also understands that the United States will make its full discovery file available to the Probation Office for its use in preparing the presentence report.

7.     **ACCEPTANCE OF RESPONSIBILITY:** The United States agrees to recommend that the Court, in computing the advisory Sentencing Guideline range, and in sentencing the defendant, gives the defendant the maximum available reduction for acceptance of responsibility. This recommendation is based upon facts currently known to the United States and is contingent upon the defendant accepting responsibility according to the factors set forth in USSG § 3E1.1. Further, the United States' agreement to recommend a reduction for acceptance of responsibility is also based on the defendant providing a full and truthful accounting in the required financial statement and, if applicable, the defendant's efforts to make immediate restitution payments. The United States is free to withdraw this recommendation if the defendant has previously engaged in any conduct that is unknown to the United States and is inconsistent with acceptance of responsibility, or if he engages in any conduct between the date of this plea agreement and the sentencing hearing, which is inconsistent with acceptance of responsibility. This recommendation is consistent with the defendant signing this plea agreement on or before July 7, 2023.

8.     **RESTITUTION:** The defendant agrees to pay restitution for all losses relating to the offense of conviction and all losses covered by the same course of conduct or common scheme or plan as the offense of conviction. The restitution in this case is $1,790. The defendant further agrees that the full amount of restitution is due and payable immediately. Defendant acknowledges that immediate payment means payment in good faith from the liquidation of all non-exempt assets beginning immediately.

9.     **FINANCIAL STATEMENT:** The defendant agrees to complete the attached financial statement and return it to this office within one week of the guilty plea hearing. The defendant agrees that this financial statement will be a full and truthful accounting, including all available supporting documentation. The defendant authorizes the United States Attorney's Office to run the defendant's credit report. The defendant also agrees that the probation office may disclose to the United States all financial statements to be completed by the defendant in connection with the preparation of the presentence report, together with all supporting documents.

10.    **SENTENCING DISCUSSIONS:** Other than agreements specifically set forth in this plea agreement, the defendant understands that sentencing discussions are not part of the plea agreement. The defendant should not rely upon the possibility of a particular sentence based upon any sentencing discussions between defense counsel and the United States, other than those memorialized in this plea agreement.

11.    **VOLUNTARINESS OF PLEA:** The defendant acknowledges that no threats, promises, representations, or agreements exist, other than those set forth in this agreement, to cause the defendant to plead guilty. Defendant acknowledges that he has read this agreement, has carefully reviewed it with his attorney and understands and voluntarily accepts all its terms.

12. **THIS IS THE ONLY PLEA AGREEMENT:** By our signatures below, the defendant and defense counsel acknowledge that this is the only plea agreement in this case.

|  |  |
|---|---|
|  | TIMOTHY M. O'SHEA<br>United States Attorney |
| July 7, 2023<br>_____<br>Date | By: _____<br>COREY STEPHAN<br>Assistant United States Attorney |
| 6/29/23<br>_____<br>Date | _____<br>ALEX VLISIDES<br>Attorney for the Defendant |
| 6-29-2023<br>_____<br>Date | _____<br>RICHARD L. CHAPMAN<br>Defendant |

5

## ACKNOWLEDGEMENTS

I, Richard L. Chapman, am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed the entire agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney, including the charges against me, the elements of those charges, and possible defenses. I am satisfied that my attorney has provided effective assistance of counsel.

_6·29·2023_
Date

_Richard Chapman_
RICHARD L. CHAPMAN
Defendant

I am the defendant's attorney. I have reviewed this agreement carefully with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

_6/29/23_
Date

_Alex Vlisides_
ALEX VLISIDES
Attorney for Defendant